Thank you. Good morning, Your Honors. Dan McCarthy of Hilfer & Burl, appearing for the appellants. I may please the Court, and I want to start by talking about the importance of circumstantial evidence in this case, which was ignored by the District Court. It was rejected in three important respects. First of all, there was evidence of transfers by Tony Namvar's family members into a trust controlled by him to the tune of $4 million, and they were transfers to various defendants. The Court... From Namvar to Brothers. These were transfers to the Brothers' companies and to Tony's own company. I thought the District Court's concern was that, at least within the period of the statute of limitations, that there was no evidence of any transfer from Namvar to the Brothers. Is that correct or not? That's correct. You want to rely on circumstantial evidence to assume that there must have been, and the question is, is that good enough? Well, on the first piece of circumstantial evidence I'm referring to, it is not the actual transfer itself that there's circumstantial evidence of. It's circumstantial evidence that Tony made a transfer through his children's accounts and trust controlled by him. You don't have any direct evidence of that. I mean, the problem is we're dealing with the uniform fraud on creditors that gives the Court the power to set aside a fraudulent transfer, but you can't identify a fraudulent transfer. Why is that not fatal to your client? It's not fatal because circumstantial evidence can provide evidence of that transfer. That's why I keep coming back to, I'm not sure that the circumstantial evidence even gets you to a prima facie case of a violation of the statute. Your Honor, I disagree, and Judge Wilson in the District Court opinion, he set the parameters by saying that the fraudulent transfer statutes provide a scalpel-like tool for a creditor. Scalpel being that we identify the transaction and we determine that it was fraudulently transferred in order to place the asset beyond the reach of creditors, and then the Court exercises its equitable authority to rescind or vacate and get the asset back. But you've got to have an asset to identify that in the Court order, and that's what's missing here. And I would say that a reasonable jury could determine from the evidence, the circumstantial evidence, that transfers must have been made, although specific, particular transfers cannot be identified. So you think that would be sufficient to uphold a jury verdict that we don't know how you did it, but you owe $4 million because we know there was money flowing around here? Well, I wouldn't put it that way, Your Honor. What I would say is millions of dollars paid for the benefit of Tony Nanvar through payments on his credit cards and Pinnacle credit cards, millions of dollars transferred to his family's trust and entities that he controlled. We're not talking about a little money. We're talking about many millions. I'm sympathetic to your position. I mean, if this was all done in front of creditors, this guy's good. Well, that's the problem. He's very clever. It's so good that you can't find the evidence of the transfers, and that's my problem as a judge. I may not like the result, but I got to go where the record and the law take me. Your Honor, that, and this is where the district court, I think, ignored a few things. First of all, the transfer is not the only thing that can be actionable. It can be an obligation incurred under the Civil Code, 3439.04 and .05. And there's an obligation incurred circumstantially by Tony transferring, by Tony's family and trust transferring money to the various defendants. So an obligation incurred is also voidable. I think in the record that Tony did take a salary from his consulting company at any point.  And what he did was he loaned money to the company and took it back as loans so that the money couldn't be levied upon as a wage. So like even before the judgment, just in the history of that, of his relationship with that entity, there's nothing in the record to indicate that he took a salary at any point? As far as we could discover, Your Honor. Nothing showing that he took a salary. Another question that is puzzling to me is why have your clients not tried to collect, basically to go after Tony's interest in that company and to get his shares? For practical reasons. That's Tony's company. As soon as we go after the shares, there's no more company. We're not going to collect anything by going after it that way. This is a clever group of people that have for years avoided being my client, and we know that's going to be the result. So we could do that, but practically speaking, it wouldn't work. You know, the California law says that the fraudulent conveyance statutes should be liberally construed with a view toward effecting their purpose, and we think that looking to circumstantial evidence is consistent with that goal of the fraudulent transfer statutes. The law holds that disclaiming an interest in assets is actionable as a fraudulent transfer, which Tony did in saying, I'm not going to take a salary. If you were to conclude that circumstantial evidence cannot be looked to for my clients. That's not the point of my question. I will grant you that there is circumstantial evidence here. The question is, is it strong enough to survive a motion to dismiss in the absence of any identifiable transfer from Tony to try and place him beyond the reach of your clients as a creditor? You know, I like the district court. You're in the position of having to draw reasonable inferences. And the question is whether the evidence provided that you could draw from the evidence a reasonable inference that all this money went to Tony, because Tony must have made transfers to the Brothers and the Rennettys. Well, that's why I was asking, is there any history of him taking a salary from that consulting entity? Because if there was, and then something changed, then maybe you could have an inference of there's fraudulent activity. But if there's no evidence that his interaction with that company and the flow of money through that company changed pre-judgment and post-judgment, then how do we draw an inference of fraudulent activity? We just couldn't go that far back and discover, because of judgment, originally it was in 2009. We just don't know. We know it was Tony's company and he took money out, but the distinction between a salary versus a loan repayment, we couldn't get the evidence of that. Do you know how he's reporting it on his taxes? Is he reporting any of this as income on his taxes? Don't know. Have you tried to get his equity? Yes, and tax returns were generally not permitted in judgment under discovery due to confidentiality. We could get bank records and general ledger records showing monies going back and forth, but to my recollection, we couldn't get the tax returns you're asking about. But any of the bank records didn't show the, they must have shown transfers from his companies to other companies. The theory is that that must have been in the form of equivalent to compensation to Tony, that he simply chose to forego and simply have those companies invoice his companies, and then his companies paid the invoice for consulting services. Is that your theory? Well, it's the other way around. The brothers' companies paid his company for consulting services, although in large part they weren't supporting invoices for that. The monies came in as needed into Penteco, and then it was taken out by Tony as needed and spent quickly so my clients could never get at it. So the day the credit card bill was due for $30,000, there was a $30,000 gift to Tony, and a lot of credit card companies got paid. Well, even more, I think indirectly, the brothers' companies paid almost $8 million in credit card payments on credit cards that Tony was a signatory in his name or in his company's name, Penteco. So the money never went through Tony's account or Penteco's account. There's no way that you can garnish the credit card company so that you can trap those funds when they're paid to the credit card company? I don't know of any way. The credit card company that were owed the money, they don't care who they get the payment from. The payment came in. They're not going to be very cooperative with you in trying to... Well, I say give it back because Tony didn't pay it. They're going to say there's no obligation of Tony to be the only one to pay the credit cards. So a generous brother can pay your credit card bill. Well, that's the whole issue, Your Honor. Is this circumstantial evidence only evidence of family generosity to the tune of many millions of dollars, or could a reasonable jury believe that the reason the money was being paid to or for Tony's benefit was because Tony had transferred money to the brothers and their companies years ago, which they then concealed and then doled out over the years on an as-needed basis? But there's no evidence of that long time ago transfer, correct? No. I mean, that does seem a little far-fetched. It seems more reasonable that, you know, Tony is getting paid. He's doing work for the company, for the brothers, and he's not getting an income, but just having all his bills paid for. So he's owed money as income, but he forgoes that income and then just has all his bills paid for by the brothers. With that, is that your theory? That's just what's happening here. But the brothers had excuses for why the money was paid, and so did Tony. The inference is that Tony wasn't taking direct payment, but instead was having it paid through his personal expenses coverage on credit cards. But that doesn't fit your fraudulent conveyance theory, though. Well, circumstantial evidence that money that belonged to Tony was being concealed for payments being made on the credit cards for his benefit. Did his companies have other employees? Panico had no other employees. That was his company. So if Panico, that's the name of the entity? His company, yes. Yeah. So if Panico invoiced one of the brothers' companies for his consulting services, it's a corporate invoice, not a personal invoice. But if the evidence is that he's the only employee of the company, then your argument is circumstantially, why would it be an unreasonable inference to conclude it was Tony's efforts that generated the invoice for services? It only could have been Tony's efforts, and that was the evidence. There was no one else on behalf of Panico rendering those services. The alleged services for which there weren't invoices for many of the payments. And there's no way you can get a district court order directed against the billing or the client company to draft those funds when the invoice is paid? I mean, we don't see cases like this very often. Usually it's garnishing somebody's wages or their savings account. Your Honor, I would like to reserve two minutes. I have about a minute left here on my opening argument. You have to put yourself at the point in time. You would have to know at that instant that the invoice was issued and then quickly get an order. And Judgment Debtor Collection in California doesn't permit that. It's a very long process. It's not designed for this kind of case. No, it isn't. And to get a third-person exam, you've got to be able to show that the person is in possession of records bearing upon the financial condition of the judgment debtor. So you've got to go through a lot of discovery to prove that first. Then you have to subpoena the records. You get fought like we did in this case through motions to quash. It's a very long process to try to get that information. And that's one of the reasons why in the statute of limitations argument, we felt the district court was wrong because we did fight hard and long to get the information, and we were strung out. And a reasonable jury could have found that with the exercise of reasonable diligence, we couldn't have obtained that information in time. And I would like to reserve the rest of my time. Thank you. All right. Okay, we have counsel sharing time on the other side of this case. I don't know who's going first. And what I've been told is that you want each five minutes. It's a 15-minute argument, so I don't know if you're ceding five minutes. No, Your Honor. I did. May it please the Court, Your Honor. Good morning. Brian David off on behalf of the Moosa-Nanvar defendants, which is Moosa-Nanvar, French and Masters Holdings. With me is my colleague, by the way, Ira Steinberg. Also present is Bruce Ullschulte, who represents Hamoya-Nanvar, also known as Shaw-Nanvar. That's a separate group of defendants. So I'd like to use ten minutes of time, and Mr. Ullschulte will use the other five minutes. All right, so the clock will show your ten minutes. So when that runs out, then we will let your counsel argue. Very good, Your Honor. Thank you. Your Honors, I don't know what questions, of course, that you have, but just to say at the outset that questions of the statute of limitations and whether or not the judgment was paid will be addressed by Mr. Ullschulte. I'll address the other issues. Your Honors, there's really nothing unusual about this case except the unprecedented attempt by the appellant plaintiffs to use the single enterprise theory in an evidentiary way. The complaint on which the summary judgment was granted, the second amended complaint, had three codes of action, plain vanilla, really. Actual fraudulent transfer, constructive fraudulent transfer, and conspiracy. The fraudulent transfer statutes are very clear, as the district court found. There must be a transfer from the debtor to a third party. That was the problem that the district court had. It's what you indicated, Judge Hellman. It's, of course, the problems that we have because the evidence, there is no evidence of that. I want to tease that out just a little bit on this salary idea and the consulting company whose name, the name keeps flying out of my mind. Penteco. Penteco. Do you dispute that if it was proven that money was earned by that company that Tony is the only participant of, so it wouldn't have to be at the benefit of his labor, and that he could take that as wages, which would then be an asset that creditors could go after, but instead he tells his brothers, don't pay me, just pay my bills, so no money actually comes to me. Do you dispute that if you could prove that that was happening, that that would be an unlawful or fraudulent transfer from Tony? Because he's basically saying to other people, I'm giving you my wages to do what I tell you to do with them. Your Honor, we have to look at the component parts of that transaction, and that would be a payment from one of the other Namvah brothers to Tony or on behalf of Tony. A transfer from one of the other Namvah brothers to or for the benefit of Tony is a transfer to Tony.  And if Tony says, yes, that's money that could come to me, but instead of giving it to me, send it to my credit card company, send it to my landlord, send it to my kid's school, isn't that Tony transferring his money or telling somebody to spend his money for him? But then the recipient of that transfer is the school. The recipient of that transfer is the credit card company. It is not the Namvah brothers who transfer the money to Tony. Well, I don't know if that's true because, again, we have to play this out sort of. It's a legal fiction in some ways, I suppose. But there is a moment in time if Tony says this, you know, you hold on to my money and pay it for me, there's a moment in time when his brothers are holding the money before they give it to the kid's school and the credit card company and et cetera. Well, even if one could prove that and there is no evidence of that, Your Honor, again, we have to break it down into the component pieces. A payment to or for the benefit of is a payment by one of the Namvah brothers either to Tony, which may be as a loan as they've claimed, and then Tony uses that money for some other purpose. But, again, the recipient of that transfer, one has to show a transfer of something from the debtor to a third party. A transfer to the debtor, that was the issue, obviously, that the district court had, that the court couldn't find any evidence of that. But to follow up on my sister's question, why isn't he transferring an intangible asset, the value of his services, which are invoiced by the brother's company and paid, or invoiced by his company and paid by the brother's company to Tony's other creditors? Again, Your Honor, if one really, assuming that that was in evidence, who received that money? Let's say, for example, Tony Namvah did, in fact, do those real estate services for his brothers. And let's, in fact, assume that the brothers sent a payment directly to American Express, as an example. So now, what's the component pieces of that? One of the brothers is paying something that either went to Tony or for the benefit of Tony to his credit card company. Who was the recipient of that? Not the brothers. The recipient of that was American Express. They would be a defendant in trying to recover that money. Now, whether or not it's recoverable is subject to a whole set of rules under Civil Code 3439. Whether it, in fact, is a voidable transfer, is there fair value for that transfer, but it's not where there's a transfer to or for the benefit. That's the key issue that's lacking in this case. And one point I really do want to clarify, Your Honor, is specifically, and I know we laid this out in our brief, but just to highlight it, for the Moosa-Namvah parties, again, Moosa, Friendship, and Masters, there are just a handful of transactions. If we can move on. So you're saying that it could be a fraudulent transfer to American Express in that case, and they're the defendant, but there's a conspiracy charge here, so if Tony's using his brother to enact that fraudulent conveyance, why isn't that proof of conspiracy to fraudulently convey? Because there's been no showing. As the district court said, Your Honor, and obviously as Israeli Hornbook Law, there needs to be a transfer from the district. I said Hornbook Law. I said Hornbook Law. I'm sorry. That was Maya. Oh, okay. That there's an absence of evidence that there was a transfer from Tony. There's speculation merely by reason of the fact that there are transactions among the family entities, but there is no evidence that are substantial. There's circumstantial evidence of it. He's doing some work for the brothers, not getting any income from it, unless he's doing it as a charity, which seems unlikely. He's getting paid for it somehow, but he's getting his bills paid directly instead of receiving his income. I want to highlight to you, Your Honor, that at least as to my client, that is simply the facts. There's nothing in the record that indicates that. As to my client, there were three loans, $25,000, $20,000, and $10,000, all of which were repaid within about 30 days. The record's clear on that. There were loans to who? To Tony. And he's repaid? And my client, again, the Musonambwa Parties, and they were repaid within about 30 days. There were those three transactions. There was another transaction where there was, in fact, a $32,000 payment by my clients, the Musonambwa Parties, to Penteco for services rendered by Tony. It was actually paid to Tony for services rendered. Nothing was repaid. And then there's one other allegation, which the plaintiff's appellants assert, where there was another transfer from a company called Daisy Lady Victoria. And what happened to the $30,000 that went to Penteco? I have no idea. Tony, Penteco was paid, and he did what he did with it. He was paid for his services, and he did what he did with it. We don't know what happens. None of your clients' companies paid Tony's credit card bills directly? I believe, Your Honor, in Mr. Trigilsa's massive reports, there was, I think, one transaction for a few thousand dollars that was actually paid by one of the Musonambwa companies. I see I'm almost out of time. Well, I want to ask about something that the district court said in its order that troubles me, and get your reaction to it. So it's talking about this whole idea of the money that might be income or wages or, you know, something. And the district court basically concludes that there's no proof that those were, that any of those transactions related to his consulting company were his assets. And here's the sentence that bothers me. The only way that transfers of funds to Tony could be tortious is if those funds actually originated with Tony and were shuffled around and ultimately returned to him as part of a scheme to hide his assets from the reach of creditors. It strikes me that that is incorrect. Because it seems like the district court is trying to say that we would only have a fraudulent transfer if the money that we're talking about starts off with Tony in the first place. And then he's, like, basically laundering it through his brothers, and then it comes back to him in some other form. But what seems to be happening here is, as we've talked about, the money starts with the companies that services are being provided for. They pay for those services, and then things go wrong. Or they don't pay. I guess they don't actually, the transactions on paper don't look like they're paying for that, because that's not how the money is happening. It's being dispersed in other ways. But the way that the district court set that up, it seems to me, is sort of factually and legally incorrect. In response to your question, I think, in context, what the district court was looking for was some scintilla of evidence that the money was Tony's to begin with. And what the appellant plaintiffs would like the court to do is say, you can forget about that. You can just look to the circumstantial evidence when there really is no... The district court is making essentially a factual finding that there were no payments from any of the defendants to Tony or his company for services provided. I think that the district court was saying that there's no evidence of payments of Tony's money to third parties or to my clients. My question is, did the district court make a finding that basically Tony, neither Tony nor his company were ever entitled to payment for services? Never. I don't believe that that was the district court's finding, Your Honor, that he was not entitled to payment for services. Indeed, that was obviously the issue in the case. So, yeah, I guess that's the confusion. Because as I read the district court opinion, it does seem to suggest that Tony had to have the money, like, before any of this happened, any dispute happened, and that the brothers are manipulating his money that way. But that's not necessarily what could happen. Tony could be due owed money, earns that money, but then the brother is holding it. So, therefore, it never has to touch Tony for there to be a fraudulent conveyance. Does that make sense? I understand what Your Honor is saying, but, again, for my client, again, whose transactions didn't reach this level, he would have had to have been a recipient of the money. He never received the money other than the repayment of the three loans. And so, you can go after the money one. The problem is, like, Tony did work through PEPCO for some company, some other company, and then is owed money for it. And that just because the money wasn't given physically to Tony first before it was conveyed doesn't mean it can't be fraudulently conveyed. I understand that, Your Honors, but, again, then, the recipients of that money are the parties who are responsible for the run-up. Right. But on the conspiracy charge of that, the person who transferred it to the recipient, did it knowing that, you know, to evade his judgment, then it does seem like a conspiracy. Your Honors, it comes back to the point that the entire case of the appellant plaintiffs about the conspiracy, they have no evidence of the conspiracy. It entirely rests on the circumstantial evidence, which they claim, of this use of the single enterprise theory, which is just not. I guess, to me, the biggest piece of circumstantial evidence is that Tony does work for these companies, but gets no income. Again, making sense under any reasonable, so something is happening to that income, right? Why isn't it reasonable to say that it's going fraudulently through these third parties? Your Honor, I'd like to limit my answer to that question. Again, as to my client, we just didn't get that far. There were very limited transactions. Thank you very much, Your Honor. Good morning, panel. May I please the Court? My name is Bruce Altshult, and I represent what we call Sean Anvar and his entities. I come to the Court with a little different background. I've been babysitting this case for longer than the other staff. To answer your question, Your Honor, Mr. McCarthy is in state court, has exercised state court judgment that are remedies. He has a court order that Penteco pay to him monies due from Tony, okay, due from Penteco to Tony. He's got that order. His remedy is to enforce that order. Your Honor, I also suggest that this is an LLC. Capture the LLC. That's the way we do this. This is a whole statutory mechanism. When an LLC owes people money, you crater the LLC. He has that remedy. Those are his remedies. I didn't come here to make these arguments but having heard questions. The credit card payments. We submitted an affidavit in support of the motion for summary judgment that the credit card payments were for services, for costs that Tony Namvar on behalf of Penteco advanced on behalf of my client's entities. He's out there. What about paying the children's tuition at the private school? Okay. He got lectured on that by the state court judge. A brother paying for his niece's bar mitzvah, his nephew's bar mitzvah, paying for private school is perfectly legal. It's not evidence of fraudulent transfer. It's a loving uncle making sure that his nephew and nieces. I'd like to have a family of loving uncles like that. I can make those arrangements. If you're willing to change your name to Namvar, we can do it right here. I mean that's one way to read the facts. Another way to read the facts is in the questions that we're asking about like this is hiding income and trying not to pay for it so that it's easily collectible again. So why shouldn't that go forward and let a fact finder figure out if this is a loving uncle situation or something else? Because this evidence was presented to a district court judge. He considered the evidence, and he was within his jurisdiction and his rights to determine that this is not the type of evidence that supports a fraudulent transfer. It doesn't comply with the statute. And, Your Honor, before I leave the lectern here, I thought I was going to come here and convince you that the statute of limitations barred all of this. This complaint is time-barred on its filing. It's time-barred. For your statute of limitations for a Uniform Affordable Transfer Act, he pled in the second amended complaint the transactions that we're now here discussing, and they predated longer than four years before the filing. Then, in my papers, I urged the court to uphold the statute of limitations finding because the original judgment was 11 years old before he filed the second amended complaint. Plus, he pled transactions that predate the filing of the complaint by four years. How is this not barred by the statute of limitations? I'm sorry, Your Honor. Yeah, I get that argument, but there's one other question I just have from the prior arguments. Can you just explain how Tony makes income? Tony runs Pentacle. That's all he does. Okay? And on behalf of Pentacle, we provide services. Those services are paid for by the brothers. My recollection is the brothers pay Pentacle for that money. Let me answer your question because something came up in one of your questions, Your Honor. Tony gets tax refunds, tax returns. He knows Tony got a $400,000 tax refund. It's in the record, a $400,000 tax refund, and he transferred it to, I think, Brother Rameen because they were going to invest in another project. That was a while ago, right? Yeah. Right. But he's reporting income sufficiently. Yeah, but how is he making that income? At least in this record, in this time period, there's no showing of how he makes any income. He's making income by performing services for the brothers' entities who are paying Pentacle for those services. I know Dan, I don't need to call him a person. The opponent's position is just based on speculation. There's got to be a presumption of the voices. I apologize. Pentacle receives income from the brothers' entities. Yes, the brothers' entities. And then Tony gets money from Pentacle. Well, it's mostly their entities, but yes. And then Tony gets money from Pentacle. Yes, and pays taxes and got a tax refund. So why are we, why is there no garnishing it? I don't understand. He's got the garnishment order in state court. He does. He's got an injunction, mandatory injunction, that any money from Pentacle His remedy is to enforce the injunction he got from Judge, what's his name? I forgot his name. But it's a state court remedy. He's got it. Exactly what you would have asked is how does he do this. He's got that state court. He has it as we're sitting here right now. And Tony's honored it to the best that Tony can honor it. Okay? He got an order. Tony had to turn over all his tax returns, turned over all his tax returns, didn't object to it. Returners, I'm out of time. I just, this is a time-barred claim. This complaint was filed 11 years after the original judgment. The specific pleadings in the complaint are older than four years. This notion that there's a delayed discovery, not to be glib, but there really was a delayed start of discovery. He should have started his discovery eight years ago, not now. There was litigation in the state courts in New York that basically extended the judgment, renewed it, whatever the term is. Your Honor, I'm out of time, but I have a complete answer for that. If PJ doesn't mind, I have no answer. Okay. Okay. So here's the interesting story. Appellant filed a motion to renew the New York judgment. Tony counter-filed a motion to say that the judgment had been paid in full. Remember, that's one of my arguments, that it had been paid in full. The matter went to hearing shortly before the hearing. Appellant's New York attorney filed a brief that said the $250,000 that was supposed to buy out the partial settlement agreement really was to buy out Dan Trevelyan's interest. They went to hearing. I'm not understanding how all of that history about the judgment relates to the statute of limitations here, because under the UBTA, the statute of limitations is triggered off of transfers and when the transfers happen. And that can happen way after a judgment is entered, because it can often take a long time to collect on a judgment. So why does all of the judgment history even matter to statute of limitations? I was just answering Justice Tolman's question. But if – all right, I'd like to finish, because I have too much. Because the courts found that the judgment was still valid and outstanding because it had been renewed. They went to hearing. The New York trial judge ruled that the judgment had been paid off in full. Tony won. We shouldn't be here. Appellant's attorney filed a last-minute brief. Tony's attorney asked the trial judge, can I respond to that? She said, no. I'm ruling in your favor. Case over. Three months later, without notice, without any hearing or anything, she just changed her mind. Trial judge changed her mind. She said, no, this judgment hasn't been paid. And so it went up to appeal without Tony being able to argue against this last-minute brief. So that answers that question. I was confused. I thought you were answering a question about the statute of limitations. You were answering a question about a different issue. I thought Justice Tolman asked me a different question. But let me answer the statute of limitations question. Your Honor is saying that the statute of limitation is triggered by each transaction that is allegedly fraudulent, okay, violative of the act. He didn't plead that. He didn't plead that. He pled specific transactions. We filed a motion for summary judgment based on those specific transactions. If he has information of specific transactions that put him within the statute of limitations, he should plead it. It's unfair to us to have him hire this glorified expert witness who is a quasi-lawyer and say, here's other transactions that were never pled in. Mr. Altshuler, do we have clients who are burdened by that? This is the forensic. Yeah, the forensic. And his, with due respect to Mr. Trigellis, it sounded more like a legal opinion than an expert opinion. But if he's got specific transactions, we're entitled to know what they are, not some glorified thing that all these transactions. And, by the way, let's be clear. It's all inferential. Everything is inferential that that expert said. It must be that because of that. Okay? He's in state court. He can come to this court with proof, and he hasn't shown that proof. Okay? You've answered my question. Do you have any other questions? No. Thank you. Sorry for that high voice. No, that's all right. All right, you've got a couple of minutes left for rebuttal, Mr. McCarthy. Thank you. Mr. Altshuler says it's all inferential. There are degrees of inference. And, Judge Forrest, your questions and, Judge Boone, the case comments were exactly on point on the issue of a conspiracy to conceal assets. If money is owed for Tony's services and it gets paid through paying his credit cards for his personal expenses that are unsupported by any defensible documentation that they were for business activities, that's a concealment of an asset that Tony was entitled to. That's the third cause of action. But the third cause of action goes beyond that and says, as we discussed earlier, if you have that much money being transferred, it can't possibly be family generosity that a reasonable jury could determine that it was money that Tony had transferred, either directly or indirectly, that was then being concealed by the brothers and their entities and doled out as needed. We've said in our brief that the definition of transfer under the Uniform Fraudulent Transactions Act has broad meaning. It includes every mode, direct or indirect, absolute or conditional, disposing of or parting with an asset or interest in that. Do you disagree with Mr. Allschultz' allegation that Tony does get paid because the brothers pay Penteco who then pays Tony? If that's the case, what are we doing here? I mean, the fact that he does get a tax refund does suggest he is getting income somehow. So can you answer any of that? That tax refund was made in 2015 for earlier years. And then Mr. Allschultz was bidding for it. Tony transferred it through to Penteco accounts and then to another entity that he controlled. And then the money was paid back to a defendant over a course of a few months. In other words, it cycled through and was hidden. But yet years ago, he did file tax returns that led to that tax refund. And to further answer your question, the theory that they make is that Tony rendered services for money that was owed to Penteco. But the problem is that Penteco got paid lots of money that then got paid out to Tony. And for most of it, there are no supporting invoices. So you are saying that it's true that the brothers pay Penteco who then pay Tony? That's some of the transactions. A lot of the transactions. Why are you garnishing money that's coming into Penteco? Because it's not Tony's money yet until it goes out. Well, I mean, then you have a complete garnishment theory there or alternative argument there. This is Mr. Allschultz's alternative remedy argument. Let's say that we have that remedy that we could try to garnish those wages. And we do have an injunction and a fact. He's never complied with it to turn over money. To hold him in contempt for the injunction. We've been trying to take his judgment debtor exam for the last year. No, no, no. Why didn't you go back to the Superior Court with an affidavit to the effect that he's resisting the garnishment order and asked that he be held in contempt for violating the L.A. Superior Court's injunction? Asked that he be jailed. Because we need evidence in the first place that he was owed money that he didn't pay to us. And we don't have that evidence. And we've been trying to get it in a judgment debtor exam for which he was served. And it didn't appear. And now we're having to start over. That's not in the record. But that's what's happening right now. We actually are trying to do that. But the availability of that one alternative remedy does not mean that we're precluded from suing the defendants for a conspiracy to conceal us. It's more than that. The problem is the circumstantial evidence that I see in your case is the fact that he's doing work and not getting any income. But if he is getting paid income, that goes to your whole circumstantial evidence argument. Right. He's being repaid loans that he says are loans that aren't income. And when we try to catch up, we're taking judgment debtor discovery. It's years after the fact that we can't get the information. The money is gone. But the more important thing, Your Honor, is it's not just money being paid into Penteco. It's credit card expenses to the tune of $8 million that were paid on credit cards. There were many credit cards, Amex and Chase, that he held in his name, in Penteco's name, with no defensible backup showing that it was for business expenses. It was personal. And as Judge Forrest's question brought out, this is a concealment of an aspect to which Tony had right, and therefore it's actionable, at least on the third claim, but also on the first and second claim, given the broad definition of transfers that I referred to. All right. I think we understand the accuracy of your question. Thank you very much. I think counsel, for the helpful argument, the matter of Nader and Sons versus Nambar is submitted.
judges: TALLMAN, FORREST, BUMATAY